UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

JUNIOR MEADE,

        Plaintiff,

  -v-                                      No. 15-CV-04822-LTS-HBP

OTIS ELEVATOR COMPANY,

        Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this single-count negligence action, Plaintiff Junior Meade ("Meade" or "Plaintiff") seeks to recover damages from Defendant Otis Elevator Company ("Otis" or "Defendant") for severe and permanent injuries allegedly suffered by Plaintiff as a result of an April 20, 2012, accident involving a service elevator manufactured, installed, and maintained by Defendant. Defendant now moves for summary judgment and the dismissal of the action. (Docket Entry Nos. 26 and 27.) Defendant also moves to preclude the expert report and testimony of Plaintiff's expert Patrick A. Carrajat. (Docket Entry No. 34.) Plaintiff moves to strike Docket Entry Numbers 55 through 67, or portions thereof, asserting that Defendant raised new arguments and facts in its reply papers. (Docket Entry No. 70.)

        The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

        The Court has reviewed carefully the parties' submissions. For the following reasons, Defendant's motion for summary judgment is granted in part, Defendant's motion to preclude Plaintiff's expert is denied and, in light of the Court's disposition of Defendant's motion for summary judgment, Plaintiff's motion to strike Docket Entry Numbers 55-67 or portions thereof based on new arguments and facts is denied as moot.

BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[1]

Plaintiff was employed at all relevant times by Mount Sinai Hospital ("Mt. Sinai") as a supplies and equipment handler. (Def. 56.1, Docket Entry No. 29, ¶ 2.) Plaintiff alleges that on April 20, 2012, he suffered injuries as the result of "an alleged misleveling of an elevator at the premises known as 1425 Madison Avenue, New York, New York [(the "Premises")] . . . on the MC floor." (Id. ¶ 3.) That elevator (the "Subject Elevator") "is identified by Mount Sinai Hospital as the East Passenger elevator 119," by OTIS as machine number 380155, [and] by the New York City Department of Buildings as Device IP37721, and is an OTIS Electronic 401 model programmed to service the FC, MC, 1 through 18 floors, of the Premises." (Id. ¶ 4.) Defendant "serviced certain electromechanical components of the [S]ubject [E]levator at the time of the alleged accident," pursuant to an elevator maintenance contract with Mt. Sinai. (Id. ¶ 5.) To Defendant's knowledge, Defendant installed each part of the Subject Elevator, including the leveling system, and its "maintenance and repair" are "handled exclusively by Otis at [Mt.] Sinai." (Deposition of the Defendant, by Steven Kleber, Tr. ("Kleber Dep. Tr."), David Paul Horowitz Declaration ("Horowitz Decl."), Exhibit O, Docket Entry No. 38-7, at 24:14-25:16, 18:2-5.)

---

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1" or "Pl. 56.1") incorporate by reference the parties' citations to underlying evidentiary submissions.

Defendant's Service Records

A review of Defendant's service records, which "reflect all procedures, repairs and callbacks" for the Subject Elevator, spanning the time period of April 20, 2011, through April 24, 2012, "reflect no leveling complaints in the year prior, and [for] four days after April 20, 2012," "no [placement of a] service call to" Defendant on the date of the alleged misleveling, and "no repairs to, or replacements of the selector tape or PPT." (Affidavit of Steven Kleber ("Kleber Aff."), Horowitz Decl., Docket Entry No. 31-6, ¶ 9.) The records show there was no report of an "issue with the stopping or leveling" of the Subject Elevator, and none of Defendant's resident elevator maintenance mechanics at Mt. Sinai "ever observed, or had reported to them," a misleveling incident in the Subject Elevator. (Id. ¶¶ 11, 13.)

Plaintiff's expert has testified that he was "not aware and [has] no proof of any prior incidents of misleveling of the [S]ubject [E]levator at any time before Mr. Meade's alleged accident." (Deposition of Plaintiff's Expert Patrick A. Carrajat ("Carrajat Dep."), Horowitz Decl., Docket Entry No. 38-3, 166:23-167:4.) He further avers that the records do not indicate whether the Subject Elevator's leveling was tested during the relevant period, and he characterizes the records as incomplete "as to all the work that was performed" on the Subject Elevator and "lack specific detail to determine the specifics of the work performed that was reported." (Affidavit of Patrick A. Carrajat, ("Carrajat Aff."), Shimko Decl., Exhibit 2, Docket Entry No. 53-2, ¶¶ 14-15.) He asserts that the records "paint [a] general picture that in the months prior to the accident date of April 20, 2012, [Defendant] worked on this elevator frequently [but Plaintiff] do[es] not have proof that the work was done correctly and did not cause a problem with the PPT leveling." (Id. ¶ 12.) Plaintiff's expert avers that Plaintiff and he

"cannot trust the maintenance, service, and repair records produced" in the above-captioned action. (Id. ¶ 15.)

The Alleged Elevator Incident

On the date of the alleged incident, Plaintiff was instructed to move a wood pallet with heavy containers of fluid chemicals stacked in two layers that was temporarily stored in a staging area on the MC floor. (Def. 56.1 ¶¶ 7-8.) The pallet, which rested atop a manual pallet jack, was approximately nine square feet, and the height of the load was chest high; Plaintiff alleges that "he could not see over the top of the load positioned on the pallet jack." (Id.; see also Pl. Resp. to Def. 56.1, Docket Entry No. 54, ¶ 8; Meade Deposition Tr., Horowitz Decl., Exhibit M-2, Docket Entry No. 48-12, at 402:25-403:21.) Plaintiff further alleges that, after pumping the handle of the pallet jack "to raise the pallet and load off the ground so it could be moved," he "pulled and steered the manual pallet jack with the heavy load of chemicals through the corridor towards the elevator lobby at the MC level." (Def. 56.1., ¶ 9.) At the east elevator lobby, Plaintiff states, he "positioned the pallet jack to one side so as not to block the area in front of the elevators," and summoned an elevator to arrive. (Id. ¶ 10.) Plaintiff testified that when the Subject Elevator arrived, he "glanced" and "looked down" into the elevator, but did not "look to see if [the elevator floor] was that level on where it meets the door," nor did he "see if [the elevator doors] had little lips or knots going all the way down until when the wheels [of the pallet] hit it."[2] (Meade Deposition Tr., Horowitz Decl., Exhibits M-1 and M-2, Docket Entry

---

[2] Defendant argues, based on this testimony, that Plaintiff did not observe any misleveling. (See Def. 56.1 ¶ 14.) The Court is obliged at this phase of the proceedings to draw all reasonable inferences in favor of Plaintiff, the non-moving party. Plaintiff asserts that he did not scrutinize the leveling of the elevator floor and was focused on the door clearance. (See Pl. Resp. to Def. 56.1 ¶ 17.)

Nos. 48-11 and 48-12, at 372:4-373:13, 388:21-23; see also Def. 56.1, ¶ 12, Pl. Resp. to Def. 56.1 ¶ 12.) Plaintiff further testified that, when the Subject Elevator arrived, he "reached into the elevator cab to press the emergency stop button" on the elevator car operating panel, in order "to prevent the elevator doors from closing, so that he could push the pallet jack with the load onto the elevator." (Def. 56.1, ¶ 11.)

According to Plaintiff's account of the incident, after pressing the emergency stop button, Plaintiff "lined up the pallet jack with the load, straight in front of and in the center of the elevator door opening," and "the front of the pallet jack with the load was approximately 8 inches away from the opening of the elevator." (Id. ¶¶ 15-16.) Plaintiff alleges that he looked to the right and to the left sides to ensure he was "clear of the elevator doors so as not to hit the doors as he pushed the pallet jack with the load onto the elevator." (Id. ¶ 16.)

Plaintiff testified that, at that point, he "pushed the pallet jack forward towards the elevator" and that the "'heavy'" pallet jack then "came to a sudden, sharp stop, causing injury to his back." (Id. ¶ 18 (quoting Meade Deposition Tr., Horowitz Decl., Exhibit M-2, Docket Entry No. 48-12, 408:22-25).) After the pallet jack stopped, Plaintiff stepped back and "did not move the pallet jack from the position where it came to a stop." (Id. ¶ 19.) The parties dispute the import of Plaintiff's testimony regarding the location of the front of the pallet jack in relation to the elevator opening at the time of the accident; Defendant argues that Plaintiff's testimony places the wheels of the pallet jack well away from the space between the elevator opening and the elevator cab, while Plaintiff proffers that the dimensions of the elevator opening were consistent with his testimony that the pallet jack wheels were obstructed by misleveling at that space. (See Pl. Resp. to Def. 56.1 ¶ 20.) Plaintiff testified that he "tried to pull the pallet jack

back from the raised lip" of the elevator cab floor before he left the scene of the alleged incident. (Pl. Resp. to Def. 56.1, ¶ 23; Def. 56.1 ¶ 23.)

According to Plaintiff, he then "returned to the loading dock area to report the incident to his supervisors, and did not return to the [S]ubject [E]levator at any time thereafter," and a Mt. Sinai employee accident/incident report was later prepared. (Def. 56.1 ¶ 24.) Marlon Rodriques, a coworker of Plaintiff, ultimately completed the task of delivering the pallet of liquid chemicals. (Id. ¶ 25.) Mr. Rodriques proffers in a declaration that he observed that the level of the elevator cab floor was higher than the "outside MC level floor" and "that the front two wheels of the loaded pallet jack were resting up against the raised floor of the elevator cab." (Declaration of Marlon Rodriques ("Rodriques Decl."), Daniel Shimko Declaration ("Shimko Decl."), Docket Entry No. 53-1, ¶ 4.)

On or about April 20, 2015, Plaintiff filed a one-count negligence Complaint in the Supreme Court of the State of New York, County of Bronx, and on June 22, 2015, Defendant removed the action to this Court. (Notice of Removal, Docket Entry No. 1.)

Expert Evidence and Challenges Thereto

Plaintiff and Defendant have each proffered expert testimony regarding Defendant's liability in this action. (See Horowitz Decl., Exhibits A, C, D, H, N, Docket Entry Nos. 31-1—31-5, 31-7—31-8, 38-1—38-6.) Defendant's expert, Nickolas A. Ribaudo, the principal of a company that provides elevator inspection services and elevator consulting services, proffers that it is his opinion that "any sudden stop of the pallet jack was not caused by a misleveling of the [S]ubject [E]levator." (See Affidavit of Nickolas A. Ribaudo ("Ribaudo Aff."), Horowitz Decl., Exhibit A, Docket Entry No. 31-1, ¶ 12.) Mr. Ribaudo has testified that

"[t]here is a transducer in the machine room called a primary position transducer [("PPT")] that [is] responsible for the final stopping of the elevator" and "tells the elevator . . . precisely where the elevator is in the hoistway and stops . . . when it's at floor level." (Nickolas A. Ribaudo Deposition Tr. ("Ribaudo Deposition Tr."), Shimko Decl., Exhibit 5, Docket Entry No. 53-6, at 55:13-25.) Mr. Ribaudo opines that, in the absence of records of complaints of misleveling prior or subsequent to Plaintiff's alleged incident, and in light of alleged damage to the hallway floor in front of the Subject Elevator and the sensitivity of the pallet jack to obstructions, among other factors, the accident cannot have happened in the manner described by Plaintiff. (See Ribaudo Aff. ¶¶ 11-12, 51-55.)

Plaintiff's elevator liability expert, Patrick A. Carrajat, proffers his opinion that "the misleveling of more than 1/2 inch [between the elevator and the floor level] observed by Mr. Meade and [Mr. Rodriques] was caused by a [a tape-driven PPT system] related failure or defect." (See Carrajat Aff., Shimko Decl., Exhibit 2, Docket Entry No. 53-2, at ¶ 17.) Mr. Carrajat explains that the PPT system includes a "tape" that runs from the top of the elevator to the bottom of the elevator, through a sheave mechanism in the elevator shaft, that includes holes that run over the sheave. (Id. at ¶ 3.) This system, according to Mr. Carrajat, is calibrated to "learn" the shaftway and regulate the position of the elevator in 1/64" increments. (Id. at ¶¶ 3-4.) Mr. Carrajat further opines that the misleveling "was caused by either a problem with the PPT that should have been discovered by Otis technicians when they performed work on the elevator, or that the PPT had been recently installed by an Otis technician and [that technician had] not permitted sufficient time [for the elevator] to 're-learn' the shaftway before [it] was allowed back into service." (Mr. Carrajat's Updated and Supplemental Expert Report, Horowitz Decl., Exhibit D, Docket Entry No. 31-8, at 6.)

Defendant challenges Mr. Carrajat's opinion testimony and expert disclosures as lacking proper factual foundation. Defendant moves to preclude Mr. Carrajat's testimony due to his alleged failure to (1) comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), and (2) provide an adequate supplemental report, when and as ordered to do so by Judge Pitman. (Docket Entry No. 34.)

## DISCUSSION

Motion to Preclude Plaintiffs' Expert Testimony as Sanction for Insufficient Disclosure

Defendant moves, pursuant to Federal Rule of Civil Procedure 37(c)(1), to preclude Mr. Carrajat from testifying in this action and at trial for failure to produce an expert witness report that conforms to the requirements of Federal Rule of Civil Procedure 26(a)(2), as well as for his alleged failure to provide an adequate supplemental report after having been ordered to do so by Magistrate Judge Henry B. Pitman, who oversees the general pretrial management of this case. (Def.'s Mem. of Law in Support of its Motion to Preclude Plaintiff's Liability Expert Patrick A. Carrajat ("Def. Preclusion Br."), Docket Entry No. 37.) Defendant generally takes issue with Mr. Carrajat's reliance on Plaintiff's account of the accident as establishing that it was caused by misleveling of the Subject Elevator, and criticizes Mr. Carrajat's discussion of possible causes of the alleged misleveling as lacking a factual basis in maintenance documentation or other aspects of the record. Plaintiff infers from testimony and the content of the records that Defendant has produced that the maintenance records are incomplete, and Mr. Carrajat opines that various defects found in inspections, and the number of service episodes that are reflected in the records that were produced, are indicative of improper

or insufficient maintenance and thus of negligence.  Plaintiff opposes the application for preclusion sanctions.

Federal Rule of Civil Procedure 26(a)(2)(B) ("Rule 26") provides that disclosure by an expert "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and that "[t]he report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."  Federal Rule of Civil Procedure 37(a)(3)(A) permits a party to "move to compel disclosure and for appropriate sanctions" if another "party fails to make a disclosure required by [Federal Rule of Civil Procedure] 26(a)."

Rule 26 is intended "to prevent a party from 'sandbagging' an opposing party with new evidence." <u>Conte v. Newsday, Inc.</u>, No. 06-Civ.-4859 (JFB) (ETB), 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011) (citation omitted).  "A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37" and, in reviewing a district court's exercise of that discretion, the Second Circuit considers:  "'(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'"

Design Strategy, Inc. v. Davis, 469 F.3d 284, 294, 296 (2d Cir. 2006) (quoting Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006)) (internal brackets omitted). "[A]lthough a 'bad-faith' violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, [such a violation] can be taken into account as part of the party's explanation for its failure to comply." Id. at 296 (emphasis omitted). "[C]ourts in this Circuit have recognized that preclusion is a 'harsh sanction,'" and it remains a "discretionary remedy even if "'the trial court finds that there is no substantial justification [for the party's conduct] and the failure to disclose is not harmless.'" Conte, 2011 WL 2671216, at *1 (quoting Design Strategy, Inc., 469 F.3d at 297) (citations omitted). Preclusion for violation of Rule 26(a) "should be distinguished from the question of" the admissibility of expert reports under Federal Rule of Evidence 702 ("Rule 702"): "Whereas Rule 26(a) guards against the presentation of sketchy and vague expert reports that provide little guidance to the opposing party as to an expert's testimony, Rule 702 guards against the presentation of insufficiently reliable evidence to the finder of fact." Id. at *4.

Defendant has not sufficiently demonstrated that Mr. Carrajat's supplemental expert report and his conduct violate Rule 26 nor that sanctions—especially the "harsh sanction" of preclusion—are warranted here. Defendant has not demonstrated that Plaintiff has withheld factual or theoretical underpinnings of Mr. Carrajat's expert testimony. Rather, it is apparent from the reports and from the extensive deposition testimony that Defendant elicited even before production of Mr. Carrajat's supplemental report that Mr. Carrajat relies on his background knowledge of the equipment in question, performed an inspection of the equipment, relies on Plaintiff's testimony that the wheels of the pallet jack were obstructed by misleveling of the cab, and draws inferences (including inferences as to missing maintenance documentation) from the evidence that Defendant has produced concerning the maintenance of the Subject Elevator. This

record does not demonstrate that Plaintiff has withheld information as to Mr. Carrajat's opinions or the facts or data Mr. Carrajat considered in forming them. Defendant's issues appear to concern the weight or evidentiary quality of Mr. Carrajat's testimony. At this point in this action, the Defendant has sufficient "guidance" as to Mr. Carrajat's testimony, and the Defendant has not demonstrated that it suffered prejudice "as a result of having to prepare to meet" whatever "new testimony" emerged at Mr. Carrajat's deposition or otherwise. Cf. Design Strategy, Inc., 469 F.3d at 296 (holding that district court properly took "severe" prejudice into account in finding that Rule 37 sanctions were warranted).

Accordingly, Defendant's motion to preclude the testimony of Mr. Carrajat pursuant to Federal Rules of Civil Procedure 26 and 37 is denied.

Motion for Summary Judgment

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted). When a properly supported motion for summary judgment is made, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (internal quotation marks and citation omitted). If the evidence presented by the non-moving party "is merely colorable, or is not

significantly probative," summary judgment may be granted. Id. at 249-50 (citations omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . Mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citation, and brackets omitted).

Plaintiff alleges that he was injured because misleveling of the Subject Elevator caused the pallet jack to stop suddenly and asserts that Defendant, as manufacturer and installer of the Subject Elevator, is liable in negligence for the April 20, 2012, alleged incident, for failing to ensure the Subject Elevator was operating in a safe manner and thereby causing the elevator to become misleveled with the ground floor. Defendant asserts that it is entitled to summary judgment dismissing Plaintiff's negligence claim because (1) Plaintiff has failed to allege notice of any defect or facts demonstrating plausibly that the accident could have occurred in the manner described by Plaintiff, and (2) Plaintiff has failed to frame a factual predicate for reliance on the doctrine of res ipsa loquitur. (See Def. Opening Br., Docket Entry No. 30.) Plaintiff argues that (1) the Defendant cannot satisfy its prima facie burden of demonstrating that it did not create, and did not have notice of, the dangerous condition because the maintenance records are incomplete, and (2) the record is sufficient to permit submission of Plaintiff's claim to the jury under the doctrine of res ipsa loquitur. (See Pl. Opp. Br., Docket Entry No. 52.)

Common Law Negligence

A "[p]laintiff must establish by a preponderance of the evidence the following elements" to prove negligence: (1) "a duty owed to plaintiff" (see Espinal v. Melville Snow

Contractors Inc., 98 N.Y.2d 136 (2002)), (2) "a breach of that duty" (see Strauss v. Belle Realty Co., 65 N.Y.2d 399 (1985)), (3) "causation" (see Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (1928)), and (4) "damages" (see Levine v. New York, 309 N.Y. 88 (1955). Skidd v. JW Marriot Hotels & Resorts, No. 06-Civ.-1554 (DAB), 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010).

If it "has agreed to maintain an elevator in safe working condition," an elevator company owes passengers a duty to maintain the elevator, and "can be liable to a passenger for 'failure to correct conditions of which it had knowledge,' or 'failure to use reasonable care to discover and correct a condition which it ought to have found.'" Ulerio v. Schindler Elevator Corp., No. 12-Civ.-01496-DCF, 2014 WL 1303710, at *4 (S.D.N.Y. Mar. 26, 2014) (internal brackets omitted) (quoting Rogers v. Dorchester Assoc., 32 N.Y.2d 553, 559 (1973)). In a negligence action, "[s]uch a company may establish prima facie entitlement to summary judgment by presenting 'competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that, even if a defect existed, the company did not have actual or constructive notice of any such defect.'" Id. (quoting Morton v. Otis Elevator Co., No. 07-Civ.-469-JTC, 2011 WL 2199848, at *5 (W.D.N.Y. June 7, 2011)) (internal quotation marks and brackets omitted). Once an "elevator company makes this prima facie showing, the plaintiff must come forward with evidence capable of showing that the defendant either: '(1) created the defect; or (2) had actual or constructive notice of the defect.'" Id. (quoting Skidd, 2010 WL 2834890, at *4). "To constitute constructive notice, a dangerous condition must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it." Skidd, 2010 WL 2834890, at *5 (internal quotation marks and citation omitted).

It is undisputed that Defendant owed Plaintiff a duty "'to maintain an elevator in safe operating condition.'" (See Def. Opening Br., at 5 (quoting Tucci v. Starrett City, Inc., 97 A.D. 811 (2d Dep't 2012)).) Defendant's service records spanning the relevant time period, which Defendant asserts "reflect all procedures, repairs and callbacks" for the Subject Elevator, do not reflect any "leveling complaints in the year prior, and [for] four days after April 20, 2012," nor the placement of a "service call to" Defendant on the date of the alleged misleveling, nor any "repairs to, or replacements of the selector tape or PPT." (See Kleber Aff., Horowitz Decl., Docket Entry No. 31-6, ¶ 9.) Moreover, the records show there was no report of an "issue with the stopping or leveling" of the Subject Elevator, and none of Defendant's resident elevator maintenance mechanics at Mt. Sinai "ever observed, or had reported to them, an incidence of misleveling in" the Subject Elevator. (Id. ¶¶ 11, 13.) Plaintiff's expert, Mr. Carrajat, has admitted as much in testimony, as he has acknowledged that he was "not aware and [has] no proof of any prior incidents of misleveling of the [S]ubject [E]levator at any time before Mr. Meade's alleged accident." (See Carrajat Dep., Horowitz Decl., Docket Entry No. 38-3, 166:23-167:4.) The Court thus finds Defendant has "present[ed] competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that, even if a defect," such as a misleveling, "existed, the company did not have actual or constructive notice of any such defect." See Ulerio, 2014 WL 1303710, at *4. Defendant's proffered evidence demonstrates that it did not have "constructive notice" of any defects, or misleveling, as no "dangerous condition" has been identified as "visible and apparent" and "exist[ing] for a sufficient length of time prior to the accident to . . . permit[] [D]efendant's employees to discover and remedy it." See Skidd, 2010 WL 2834890, at *5.

Plaintiff has failed to "come forward with evidence capable of showing that . . . [D]efendant either: '(1) created the defect; or (2) had actual or constructive notice of the defect." See id. at *4-5. Mr. Carrajat's testimony that the service records produced in the above-captioned action are incomplete, and "paint [a] general picture that in the months prior to the accident date of April 20, 2012, [Defendant] worked on this elevator frequently," and thus "cannot [be] trust[ed]," constitutes "mere speculation" that a defect existed, and that Defendant had actual or constructive notice of such a defect. (See Carrajat Aff., ¶¶ 12, 14-15.) Plaintiff "may not rely on [such] mere speculation or conjecture as to the true nature of the facts to overcome" the instant motion, as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." See Hicks, 593 F.3d at 166 (ellipses omitted). Plaintiff does not and cannot offer any evidence in the record that affirmatively supports the proposition that he was injured because misleveling of the Subject Elevator caused the pallet jack to stop suddenly and that Defendant, as manufacturer and installer of the Subject Elevator, is liable in negligence for the April 20, 2012, alleged incident, for causing the elevator to become misleveled with the ground floor and failing to ensure the Subject Elevator was operating in a safe manner.

Plaintiff thus fails to establish that Defendant breached a duty owed to him, an element necessary to prove a common law negligence claim. See Strauss, 65 N.Y.2d at 399. Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's claim to the extent it is brought under a traditional negligence theory, as there is no evidence in the record from which Plaintiff can prove that Defendant had actual or constructive notice of any leveling defect in the Subject Elevator. See Ulerio, 2014 WL 1303710, at *4.

Res Ipsa Loquitur

The Court next addresses whether the record is sufficient to permit submission of Plaintiff's claim to the jury under the doctrine of res ipsa loquitur.

Res ipsa loquitur "enables a plaintiff to prevail in a certain type of circumstance in proving negligence even though the plaintiff cannot show exactly who or what caused [his] injury." Manhattan by Sail, Inc. v. Tagle, 873 F.3d 177, 180 (2d Cir. 2017). "Under that doctrine, a fact-finder may infer negligence merely from the happening of the event that caused the harm if: (1) the event is of a type that ordinarily would not occur in the absence of negligence; (2) it is caused by an agency or instrumentality under the exclusive control of the party charged with negligence; and (3) it is not due to any voluntary action or contribution on the part of injured party." Id. (citing Sojak v. Hudson Waterways Corp., 590 F.2d 53, 55 (2d Cir. 1978) (per curiam); Savard v. Marine Contracting Inc., 471 F.2d 536, 542–43 (2d Cir. 1972)). Application of "[r]es ipsa loquitur is not limited to accidents that could occur only because of negligence[,]" and "[f]or res ipsa loquitur to apply, a claimant must show that the event is of a type that ordinarily does not occur in the absence of negligence." Id. (emphasis in original). Such a showing does not require an injured claimant "to eliminate with certainty all other possible causes or inferences, which would mean that the plaintiff must prove a civil case beyond a reasonable doubt." Id. at 181 (internal quotation marks and citation omitted). A court cannot apply the res ipsa loquitur doctrine when "the specific cause of the [accident] is known and agreed upon." See Skidd, 2010 WL 2834890, at *3 (citations omitted).[3]

---

[3] Here, the specific cause of the elevator incident is neither known nor agreed upon by the parties; thus, the application of res ipsa loquitur is not foreclosed. Cf. Skidd, 2010 WL 2834890, at *3.

"Constru[ing] all evidence in the light most favorable to" Plaintiff and "drawing all inferences and resolving all ambiguities in [his] favor," see Dickerson, 604 F.3d at 740, Plaintiff has sufficiently demonstrated the three elements necessary to permit his case to be presented to a jury on the theory of res ipsa loquitur.

First, Plaintiff has sufficiently demonstrated that the alleged misleveling that he claims resulted in his injuries was an incident "of a type that ordinarily would not occur in the absence of negligence." See Manhattan by Sail, 873 F.3d at 180. Defendant's own expert Nickolas A. Ribaudo has testified that the PPT is "responsible for the final stopping of the elevator" and "tells the elevator . . . precisely where the elevator is in the hoistway and stops . . . when it's at floor level." (See Ribaudo Deposition Tr., Shimko Decl., Exhibit 5, Docket Entry No. 53-6, at 55:13-25.) Plaintiff's expert has proffered an opinion that the alleged misleveling "was caused by either a problem with the PPT that should have been discovered by Otis technicians when they performed work on the elevator, or that the PPT had been recently installed by an Otis technician and [that technician had] not permitted sufficient time [for the elevator] to 're-learn' the shaftway before [it] was allowed back into service." (Mr. Carrajat's Updated and Supplemental Expert Report, Horowitz Decl., Exhibit D, Docket Entry No. 31-8, at 6.)

Second, Defendant's own witness has testified that, to his knowledge, Defendant had "exclusive control" over the relevant features of the Subject Elevator at all relevant times, as Defendant installed each part of the Subject Elevator, including the leveling system, and its "maintenance and repair" is "handled exclusively by Otis at [Mt.] Sinai." (See Kleber Dep. Tr., Horowitz Decl., Exhibit O, Docket Entry No. 38-7, at 24:14-22, 18:2-5, 25:9-16.) Plaintiff has

thus demonstrated sufficiently that Defendant had exclusive control over the instrumentality at issue.

Finally, Defendant has not even attempted to demonstrate that the alleged incident is "due to any voluntary action or contribution on the part of" Plaintiff. See Manhattan by Sail, 873 F.3d at 180. Rather, Defendant's position is that Plaintiff's account of the accident is not credible and that the accident was not the result of misleveling at all. Whether the elevator misleveled and caused Plaintiff's accident is a factual issue for determination by the jury.

Plaintiff has not "eliminate[d] with certainty all other possible causes [of his accident] or inferences"—possibilities that the Defendant explores at great length in its motion papers. See Manhattan by Sail, 873 F.3d at 181. The controlling law of this Circuit, however, does not require him to do so. See id. Plaintiff has proffered his own testimony that the pallet jack was impeded by misleveling of the elevator and expert evidence as to possible causes of the alleged misleveling. Defendant, rather than proffering evidence that misleveling of the sort alleged by Plaintiff could occur in the absence of negligence, contends that the accident was caused by other hazards entirely—a broken portion of the concrete hallway floor before the elevator entrance, or debris on the hallway floor. The issues of the underlying cause of the accident, and whether it could have occurred in the absence of negligence by the Defendant, are for the jury.

Accordingly, Defendant's motion for summary judgment is denied to the extent it seeks dismissal of Plaintiff's claim premised on the doctrine of res ipsa loquitur.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted to the extent it seeks preclusion of Plaintiff's claims that are based on ordinary negligence principles and denied insofar as Plaintiff seeks to proceed on the basis of res ipsa loquitur. Defendant's motion pursuant to Federal Rule of Civil Procedure 37 to preclude the testimony of Plaintiff's expert witness is denied. Plaintiff's motion to strike Docket Entry Numbers 55-57 is denied as moot in light of the disposition of Defendant's summary judgment motion.

The final pre-trial conference in this case is scheduled to proceed on **February 23, 2018, at 11:30 a.m.** The parties are directed to confer and file their joint pre-trial submissions in accordance with the Pre-Trial Scheduling Order (Docket Entry No. 13). The reference to Magistrate Judge Pitman for general pretrial management remains in effect. The parties are further directed to meet promptly with Magistrate Judge Pitman for settlement purposes.

This Memorandum Order and Opinion resolves Docket Entry Numbers 26, 27, 34, and 70.

SO ORDERED.

Dated: New York, New York
December 18, 2017

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge